■ Marcia Ferland, as Administrator of the Estate of Rene L. Ferland Jr., Deceased, Appellant-Respondent, v GMO Re-

NEWABLE RESOURCES LLC et al., Respondents, and GILBERT E. SOCHIA, Appellant, et al., Defendant. [963 NYS2d 428]—

Rose, J. Appeals (1) from an order of the Supreme Court (Demarest, J.), entered November 14, 2011 in St. Lawrence County, which granted a motion by defendants GMO Renewable Resources LLC and Fund 6 Domestic LLC for summary judgment dismissing the complaint against them, (2) from an order of said court, entered November 17, 2011 in St. Lawrence County, which granted a motion by defendants St. Lawrence County Snowmobile Association Inc., Sno-Skippers Inc. and Cranberry Lake Mountaineers Snowmobile Club Inc. for summary judgment dismissing the complaint against them, and (3) from an order of said court, entered February 2, 2012, which denied defendant Gilbert E. Sochia's motion for summary judgment dismissing the complaint against him.

Plaintiff's husband (hereinafter decedent) died when his snowmobile struck the side of a tractor-trailer carrying a load of logs on a private logging road that was also used as a snowmobile trail on property owned by defendant Fund 6 Domestic LLC (hereinafter Fund 6) in St. Lawrence County. Fund 6 is owned by defendant GMO Renewable Resources LLC (hereinafter GMO). Defendant Gilbert E. Sochia, an independent contractor, was driving the tractor-trailer. Defendants St. Lawrence County Snowmobile Association Inc. (hereinafter SLCSA), Sno-Skippers Inc. and Cranberry Lake Mountaineers Snowmobile Club Inc. (hereinafter collectively referred to as the snowmobile clubs) maintain snowmobile trails in the County, including the one on which decedent was traveling at the time of the accident.

Plaintiff commenced this action for, among other things, wrongful death and, after joinder of issue and discovery, defendants moved for summary judgment dismissing the complaint against them. Supreme Court granted the motions of GMO, Fund 6, SLCSA and the snowmobile clubs on the grounds that Fund 6, SLCSA and the snowmobile clubs were entitled to immunity under General Obligations Law § 9-103 and the consideration exception to the grant of immunity under the statue did not apply, and GMO was not an owner of the property. The court denied summary judgment to Sochia, finding

questions of fact as to whether he breached a duty to decedent or could rely on the emergency doctrine. Plaintiff appeals the orders granting summary judgment to GMO, Fund 6, SLCSA and the snowmobile clubs, and Sochia appeals from the order denying his summary judgment motion. We affirm.

General Obligations Law § 9-103 provides immunity, subject to certain exceptions, to landowners, lessees and occupiers who make their land available to the public for various enumerated recreational activities, including snowmobiling. As relevant here, the consideration exception provides that immunity does not exist "for injury suffered in any case where permission . . . was granted for a consideration, other than the consideration, if any, paid to said landowner by the state or federal government" (General Obligations Law § 9-103 [2] [b]). It is the plaintiff who has the burden of establishing that the claimed exception applies and, as the Court of Appeals has instructed, we must strictly construe the exception so as not to defeat the statute's broad purpose (*see Farnham v Kittinger*, 83 NY2d 520, 529-530 [1994]; *Morales v Coram Materials Corp.*, 51 AD3d 86, 90-91 [2008]).

Plaintiff contends that the consideration exception applies here based on "recreation leases" that Fund 6 entered into with certain nonparty fish and game clubs, whereby it accepted rent in consideration of its grant of an exclusive right to the clubs to post the leased premises and use them "for the limited purposes of hunting, trapping, fishing, hiking, camping and other recreational activities." According to plaintiff, snowmobiling was necessarily included in the "other recreational activities" for which the fish and game clubs paid consideration. The recreation leases, however, contain no provisions that are pertinent to snowmobiling, they reserve to the landowner the right to allow other activities on the leased premises and there is no evidence that Fund 6 ever limited snowmobiling on its trails to members of the fish and game clubs or that those clubs had any involvement in maintaining the snowmobile trails. Rather, it was the snowmobile clubs who maintained the trails through the volunteer efforts of their members, pursuant to a use agreement between Fund 6 and SLCSA that granted permission to use the property for snowmobiling "without charge." Accordingly, we find no evidence of any nexus between the rents received by Fund 6 under the recreation leases and the blanket permission granted by Fund 6 to all snowmobilers to use its property for snowmobiling pursuant to the use agreement (*see Powderly v Colgate Univ.*, 248 AD2d 365, 365 [1998], *lv denied* 92 NY2d 811 [1998]; *Martins v Syracuse Univ.*, 214 AD2d 967,

968 [1995]; *Bowles v Kawasaki Motor Corp. USA*, 179 AD2d 299, 302 [1992]; *compare Jones v Lei-Ti Too, LLC*, 45 AD3d 1468, 1469 [2007]).

Nor do we find plaintiff's reliance on Fund 6's interaction with nonparty Cranberry Lake Fish and Game Club germane to the issue of consideration. The record is clear that the accident did not occur on land leased by the Cranberry Lake Fish and Game Club, and its attempt to exclude snowmobilers from the premises it leased was part of its unsuccessful attempt to require the snowmobile clubs to pay rent for use of trails crossing its leased premises.

For its part, SLCSA entered into identical use agreements permitting the snowmobile clubs to maintain trails on over 700 privately-owned properties in St. Lawrence County—including those of Fund 6—without the payment of any rent for their use. Contrary to plaintiff's contention, the standard provision in SLCSA's use agreement form requiring SLCSA to name the landowner as an additional insured on SLCSA's trail insurance policy did not constitute consideration for allowing the public to snowmobile on the properties. Rather, the insurance provision enables SLCSA to maintain freely accessible snowmobile trails on private property, and it does no more than to protect landowners who open their land to snowmobiling free of charge from incurring the cost of defending claims that are subject to dismissal pursuant to General Obligations Law § 9-103. To treat it as consideration would eliminate the statutory immunity for all 700 landowners who have entered into the standard use agreement and thus subvert the underlying purpose of the statute (*see generally Iannotti v Consolidated Rail Corp.*, 74 NY2d 39, 45-46 [1989]; *Perrott v City of Troy*, 261 AD2d 29, 33 [1999]). Moreover, as the evidence in the record indicates that the insurance is paid for by the state, it does not meet the statute's definition of consideration (*see* General Obligations Law § 9-103 [2] [b]).

Nor is there any evidence that the dues paid by the members of the snowmobile clubs served as payment for the ability to use the trails (*see e.g. Sabia v Niagara Mohawk Power Corp.*, 87 AD3d 1291, 1293-1294 [2011]; *Heminway v State Univ. of N.Y.*, 244 AD2d 979, 980 [1997], *lv denied* 91 NY2d 809 [1998]; *Weller v Colleges of the Senecas*, 217 AD2d 280, 285 [1995]); *compare Schoonmaker v Ridge Runners Club 99*, 119 AD2d 858, 860 [1986], *appeal dismissed* 68 NY2d 807 [1986]). In any event, decedent and his traveling companions paid nothing to use the trails and were not members of any snowmobile club. In sum, as the evidence establishes that the snowmobile trails were

open to the public without charge, and plaintiff failed to show that the consideration exception applies, Supreme Court properly ruled that Fund 6, as the landowner, and SLCSA and the snowmobile clubs, as occupiers, are entitled to immunity pursuant to General Obligation Law § 9-103 (see *Bellone v J.R. Shooting Preserve*, 192 AD2d 633, 633 [1993]; *Dean v Glens Falls Country Club*, 170 AD2d 798, 799 [1991]). The record also supports Supreme Court's conclusion that GMO cannot be held liable because it did not own the property.

On Sochia's appeal, he argues that he owed no duty to decedent or that, in the alternative, he is entitled to dismissal based on either decedent's assumption of the risk or the emergency doctrine. We cannot agree. The assumption of the risk doctrine is limited in its application and is intended to "foster[ ] . . . socially beneficial activities by shielding coparticipants, activity sponsors or venue owners from potentially crushing liability" (*Custodi v Town of Amherst*, 20 NY3d 83, 88 [2012] [internal quotation marks and citation omitted]; see *Trupia v Lake George Cent. School Dist.*, 14 NY3d 392, 395 [2010]). Sochia did not own the property, and he was neither a sponsor of decedent's activity nor a coparticipant. Accordingly, the doctrine does not apply to relieve him of any duty (see *Custodi v Town of Amherst*, 20 NY3d at 89). As for the emergency doctrine, there are disputed issues as to Sochia's view, approach, positioning and time to react to the situation, all of which present questions of fact as to whether Sochia's actions were reasonable (see *Cahoon v Frechette*, 86 AD3d 774, 778 [2011]; *Haider v Zadrozny*, 61 AD3d 1077, 1078-1079 [2009]; *Quinones v Community Action Commn. to Help the Economy, Inc.*, 46 AD3d 1326, 1327 [2007]). Thus, Supreme Court properly denied Sochia's motion for summary judgment (see *Del Costello v Delaware & Hudson Ry. Co.*, 274 AD2d 19, 23 [2000]; *Lee v Long Is. R.R.*, 204 AD2d 280, 282 [1994]).

Mercure, J.P., Lahtinen and Garry, JJ., concur. Ordered that the orders are affirmed, without costs.